LEONARD HOWARTH, receiver, *vs.* BENJAMIN LOMBARD, JR.

Suffolk.   January 16, 1899. — March 27, 1900.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & HAMMOND, JJ.

*Liability of Stockholder of Corporation organized in another State.*

A shareholder, who is a citizen of this State, in a State bank of Washington is bound by the constitution and laws of that State which entered into the contract by which he took his shares; and a receiver of the bank duly appointed and authorized there, may recover in Massachusetts the amount of an assessment laid by the Superior Court of Washington upon the defendant as such shareholder.

CONTRACT, by the receiver of the Traders' Bank of Tacoma, a State bank of Washington, against one of the shareholders, a citizen of Massachusetts, to collect from him a final assessment to pay the debts of the corporation as prescribed by the statutes of Washington.   The defendant demurred to the declaration, assigning as grounds therefor: 1. Want of equity; 2. That it did not appear by the declaration that under the laws of this Commonwealth the defendant was under any liability to the plaintiff; 3. That the plaintiff could not, as receiver of a foreign corporation, recover upon the cause of action set forth in the declaration; 4. That the liability, if any, could only be enforced by the laws of the State of Washington.   The Superior Court sustained the demurrer and ordered judgment for the defendant; and the plaintiff appealed.   The facts appear in the opinion.

The case was argued at the bar in January, 1899, and afterwards was submitted on briefs to all the justices except *Barker* and *Loring*, JJ.

*H. R. Bailey*, (*J. W. Saxe* with him,) for the plaintiff.

*R. Bradford*, (*E. G. McInnes* with him,) for the defendant.

KNOWLTON, J.   This is an action brought by the plaintiff as receiver of the Traders' Bank of Tacoma, in the State of Washington, to recover the amount of an assessment laid by the Superior Court of that State upon the defendant as a stockholder.  A demurrer was filed which was sustained by the Superior Court, and the case comes before us on an appeal from a judgment for the defendant.

The constitution of Washington contains this provision : " Each stockholder of any banking or insurance corporation or joint stock association shall be individually and personally liable, equally and ratably, and not one for another, for all contracts, debts and engagements of such corporation or association accruing while they remain such stockholders, to the extent of the amount of their stock therein at the par value thereof, in addition to the amount invested in such shares." Const. of Wash. art. 12, § 11.   A statute which is made a part of the plaintiff's declaration is in these words : " Each and every stockholder shall be personally liable to the creditors of the company, to the amount of what remains unpaid upon his subscription to the capital stock, and not otherwise ; provided, that the stockholders of every bank incorporated under this act or the territory of Washington shall be held individually responsible, equally and ratably," etc. (then following the exact language of the constitution).   1 Wash. Code, § 1511.   It is averred that this statute was in force at the time of the organization and incorporation of the Traders' Bank, and has been ever since.   The statutes do not more particularly define the nature of this liability, and they contain nothing as to the means of enforcing it.   The meaning of the language in reference to the particular nature of the obligation and the method of enforcing it was left to be determined by the courts.   Several decisions of the Supreme Court of Washington have been made in regard to it.   In one case the court uses this language : " It will be seen that there is no language which in express terms gives the creditors the immediate or any right of action.   The liability is not on, but for, the contract, debt, or agreement.   That the liability so provided is in addition to that flowing directly from the holding of stock which has not been fully paid for.   The latter, in event of the insolvency of the corporation, is held to

be a trust fund for creditors, and there is no good reason why the same should not be held as to the former. No satisfactory reason can be given for holding one to be a trust fund and the other not to be. There is no principle by which the two classes of liability can be distinguished further than that one is primary and the other secondary; for while it is true that one can be enforced by the corporation itself, and the other only by creditors, yet they were both created for the benefit of the corporation in carrying on its business, and to secure to creditors the payment of its obligations. If the liability which is clearly primary must be treated as a trust fund for the benefit of all of the creditors of the corporation, greater reason exists why a liability which is secondary only, and created entirely for the benefit of the creditors, should likewise be treated as such trust fund. There is nothing in our constitution which defines the method by which this liability shall be made available. Hence the method must be determined by the courts, and their aim should be to prescribe one which will accomplish the object of the provision with the least inconvenience to the creditors, without unnecessary annoyance to the stockholders." *Wilson* v. *Book*, 13 Wash. 676, 679. See also *Watterson* v. *Masterson*, 15 Wash. 511. It is decided that this liability cannot be enforced directly by individual creditors, but only by a receiver duly appointed, and by him only after the application of the available assets of the corporation to the payment of its debts. This construction of the statute, made by the highest court of the State in which it was enacted, is binding upon us. *Hancock National Bank* v. *Farnum*, 176 U. S. 640.

The principal question in the case is, whether such a liability can be enforced against stockholders in this Commonwealth. It is familiar law that statutes do not extend *ex proprio vigore* beyond the boundaries of the State in which they are enacted. If they are merely penal, they cannot be enforced in another State. If they furnish merely a local remedy for the invasion of a recognized right which is protected elsewhere in other ways, they cannot be given effect in another jurisdiction. *Richardson* v. *New York Central Railroad*, 98 Mass. 85, 89. The fundamental question is whether there is a substantive right originating in one State and a corresponding liability which follows the

person against whom it is sought to be enforced into another State. Such a right, arising under the common law, is enforceable everywhere. Such a right, arising under a local statute, will be enforced *ex comitate* in another State, unless there is a good reason for refusing to enforce it. It will be enforced, not because of the existence of the statute, but because it is a right which the plaintiff legitimately acquired, and which still belongs to him. If the statute creating the right is against the policy of the law of the neighboring State, that is a sufficient reason for refusing to enforce the right there. In the neighboring State, in such a case, it will not be considered a right. If the enforcement of a statutory right in a neighboring State in the manner proposed will work injustice to its citizens, considerations of comity do not require the recognition of it by the courts of that State. If the right by the terms of the statute creating it is to be enforced by prescribed proceedings within the State, the right is limited by the statute, and can only be enforced in accordance with the statute. If it is of such a kind that, with a due regard for the interests of the parties, a proper remedy can be given only in the jurisdiction where it is created, it will not be enforced elsewhere. But if there is a substantive right of a kind which is generally recognized, courts through comity ought to regard it, and enforce it as well when it arises under a statute of another State as when it arises at common law, unless there is some good reason for disregarding it. These seem to be the reasons and principles which govern the action of the courts in cases of this kind. See *Erickson* v. *Nesmith*, 15 Gray, 221 ; *S. C.* 4 Allen, 233 ; *Halsey* v. *McLean*, 12 Allen, 438 ; *Smith* v. *Mutual Life Ins. Co.* 14 Allen, 336, 342 ; *Post* v. *Toledo, Cincinnati, & St. Louis Railroad*, 144 Mass. 341 ; *Bank of North America* v. *Rindge,* 154 Mass. 203 ; *Higgins* v. *Central New England & Western Railroad,* 155 Mass. 176 ; *Walsh* v. *New York & New England Railroad,* 160 Mass. 571 ; *Hancock National Bank* v. *Ellis,* 166 Mass. 414 ; *S. C.* 172 Mass. 39.

The question whether the liability in cases of this kind is contractual or only statutory has been answered differently in different jurisdictions. In *Burch* v. *Taylor,* 1 Wash. 245, 248, a case which has since been modified in other particulars, it is said that the liability is contractual, and although in the other decisions

of that State we have seen no other direct statement upon the subject, we understand them virtually to hold the same thing. It is not the statute which directly and proximately creates the liability ; it is the voluntary action of the stockholders under the statute, followed by action of creditors which is founded on the action of the stockholders. This statute was in existence before the Traders' Bank was organized. The stockholders subscribed for their stock with full knowledge of the statute, and they must be held impliedly to have agreed to be bound by it. The statute enters into and forms a part of their undertaking as stockholders, and their implied agreements in that relation conform to it. It is to be noticed under this statute that stockholders, merely by subscribing for stock, without an express promise to pay for it, are bound in all corporations to pay the amount of their unpaid subscriptions, if needed, and in banking corporations to pay as much more, if it is called for to satisfy creditors. In this respect their undertaking is like that of stockholders in many other States, but unlike that of stockholders in Massachusetts who become such under statutes which provide for the collection of stock subscriptions by selling the stock to pay the assessment upon it. See *New Haven Horse Nail Co.* v. *Linden Spring Co.* 142 Mass. 349, 354. Although the liability is founded on a statute, there is a contractual element entering into it. The undertaking is as if one subscribing for stock expressly agreed to take and hold it under a previously prepared contract in writing that all who should become holders of the stock should pay the amount of their subscriptions to the corporation when needed, and should pay the additional sum to create a fund for creditors if the corporation should become insolvent and a receiver should be appointed to collect it. It was said by Mr. Justice Field in *Post* v. *Toledo, Cincinnati, & St. Louis Railroad*, 144 Mass. 341, 344, that such an obligation " is *quasi ex contractu.*" In *Concord First National Bank* v. *Hawkins*, 174 U. S. 364, 372, Mr. Justice Shiras says : " Undoubtedly, the obligation is declared by the statute to attach to the ownership of the stock, and in that sense may be said to be statutory. But as the ownership of the stock, in most cases, arises from the voluntary act of the stockholder, he must be regarded as having agreed or contracted to be subject to the obligation." In *Hawthorne* v. *Calef*, 2 Wall. 10, it is decided to be contractual in the

sense that under the Constitution no subsequent statute can impair the obligation. See also *Hancock National Bank* v. *Ellis*, 166 Mass. 414; *Flash* v. *Conn*, 109 U. S. 371; *Huntington* v. *Attrill*, 146 U. S. 657; *Casey* v. *Galli*, 94 U. S. 673; *United States* v. *Knox*, 102 U. S. 422; *Richmond* v. *Irons*, 121 U. S. 27, 55; *Dexter* v. *Edmands*, 89 Fed. Rep. 467; *Howell* v. *Manglesdorf*, 33 Kans. 194, 199; *Ferguson* v. *Sherman*, 116 Cal. 169. The weight of authority is in favor of holding this statutory liability to be also contractual. At all events, it is a liability which corresponds to a substantive right that grows out of voluntary action which is in the nature of an implied promise to the corporation that is being formed, and to those who may become creditors of the corporation. This action is followed by the completion of the organization of the corporation, and the giving of credit to the corporation by those who trust, in part at least, to the implied promise of the stockholders. If the voluntary action is a purchase of stock instead of an original subscription for it, the principle is the same. Such a right ought to be enforceable.

Inasmuch as the nature of it and the method of enforcing it depend upon the statute which enters into the implied contract, we must look to the statute to ascertain its extent and the manner of enforcing it. If it is of such a nature as to call for local proceedings in the State where the corporation is, in order to adjust equities, such proceedings must be had, and it cannot be made effectual without them. Most of the cases in which creditors of foreign corporations have been refused relief in this Commonwealth have shown rights which, under the statutes creating them, could not properly be enforced without proceedings in the foreign State whereby equities could be adjusted. In the present case, as the statute has been construed, it is plain that no action can be maintained against a stockholder until after proceedings in a court of Washington, showing the insolvency of the corporation and the need of payment to satisfy the claims of creditors. After such proceedings, and an adjustment of the rights and liabilities of the corporation, of creditors, and of stockholders, collection can be made from stockholders wherever they are found.

In *Hancock National Bank* v. *Ellis*, 166 Mass. 414; *S. C.* 172 Mass. 39, the plaintiff was allowed to recover because a substan-

tive right had grown up which had been held by the court of Kansas to be contractual, and because the preliminary proceedings in Kansas had been taken, which were necessary under the statute to the enforcement of the right in other jurisdictions. These proceedings, which were merely the recovery of a judgment against the corporation with proof that it could not be collected in the ordinary way, removed the only limitation upon the right to proceed by action against any stockholder wherever he might be found. All having been done that the statute required to be done, it was held that, as against one who had become a stockholder in a corporation governed by such a law, there was no injustice in allowing the plaintiff to proceed in our courts.

In the case at bar a receiver of the Traders' Bank has been appointed, the amount of its assets and liabilities has been judicially determined, the necessity for an assessment upon stockholders and the amount of the required assessment have been ascertained, an assessment upon all stockholders has been made, and the receiver who is to hold this fund in trust for creditors has been directed to collect it. We see no injustice to the defendant in holding him here to the performance of the obligation which he voluntarily assumed in another State.

The question arises, how far these proceedings in the court of Washington are binding on the defendant. The stockholders must be assumed to have understood the statute from the first as it has been construed by the court. They must be presumed to have agreed that on the insolvency of the corporation a receiver might be appointed by the court, and the affairs of the corporation administered, and the amount of its assets and liabilities determined, and the deficiency ascertained under the order of the court, and an assessment to meet this deficiency made ratably upon all who were then stockholders. This is the only proper way of accomplishing the object of the statute, and the statute, as construed by the local courts, means this as plainly as if every part were expressed. Under the statute the stockholders impliedly agreed that if their subscriptions were in part unpaid when they were needed for creditors, they would pay the balance to the corporation or its legal representative, and that if more was needed they would also pay their proper share,

up to the amount of their subscriptions, to the trustee of this additional fund, for the benefit of creditors. The determination of the questions involved are a part of the proceedings of the court in the administration of the affairs of a local insolvent corporation. The court of Washington, acting under its general authority in such administration, is the only tribunal which has jurisdiction to determine the amounts due creditors, and to collect and apply the assets of the corporation. The undertaking of the stockholders relates directly to the payment of amounts, so to be ascertained. The ascertainment is like a common case of a judgment against a corporation which is binding on stockholders. The members of such corporations, as well as the corporations themselves, are within the jurisdiction of the local court so far as is necessary for the determination of the rights and liabilities of the corporation and its members among themselves. In reference to this kind of liability such decisions and orders are binding on stockholders who are not before the court otherwise than by virtue of their membership in the corporation. *Elderkin* v. *Peterson*, 8 Wash. 674. *Hawkins* v. *Glenn*, 131 U. S. 319. *Great Western Telegraph Co.* v. *Purdy*, 162 U. S. 329, 336. *Glenn* v. *Liggett*, 135 U. S. 533. *Sanger* v. *Upton*, 91 U. S. 56, 58. *Marson* v. *Deither*, 49 Minn. 423, 426. *Lewis* v. *Glenn*, 84 Va. 947, 970, 979. *Hamilton* v. *Glenn*, 85 Va. 901. *Glenn* v. *Williams*, 60 Md. 93, 116.

That such adjudications are binding upon absent stockholders in reference to assessments for unpaid subscriptions has often been expressly decided. See cases last above cited. The rule is discussed at length in *Hawkins* v. *Glenn, ubi supra.* Under the statute now before us we can see no difference in principle between the secondary liability and the primary liability referred to in the above quotation from the opinion in *Wilson* v. *Book*, 13 Wash. 676. Each grows out of the same statute and the same undertaking. Each is founded on an implied promise made in pursuance of the requirements of the statute. In reference to each, the subscriber for stock contemplates the same kind of proceedings, and a collection by the same officer, who represents not only such assets as the corporation has for all purposes, but the right to a special fund, which is an asset that can be collected and used for creditors only. In *Cole* v.

*Satsop Railroad*, 9 Wash. 487, and *Hardin* v. *Sweeney*, 14 Wash. 129, it is held that the receiver is the only person who can collect this fund.   This is equivalent to saying that it can be collected only of those who are stockholders at the commencement of the proceedings, and that while it is not in the narrow sense an asset of the corporation, it is an asset to be used by the receiver and the court for the benefit of the corporation and of the creditors, in administering the affairs of the corporation. See *Wilson* v. *Book*, 13 Wash. 676, 679; *Irons* v. *Manufacturers' National Bank*, 21 Fed. Rep. 197.   There is as much reason for holding the proceedings of the court binding upon absent stockholders in this part of the administration of the affairs of the corporation as in the collection of unpaid subscriptions.   The primary fund and the secondary fund are both to be administered under the order of the court.   The court, in making assessments for unpaid subscriptions, does not act merely as the representative of the directors, who might have made such an assessment, but by virtue of its general power to do all that is proper in settling the affairs of the corporation.

These assessments are in principle like the assessments made by the court upon the members of insolvent mutual fire insurance companies under the laws of this Commonwealth, which are binding upon the members to whom no actual notice is given. *Commonwealth Ins. Co.* v. *Wood*, 171 Mass. 484.   The only difference is that our statutes in regard to mutual insurance companies prescribe the manner of making an assessment, while in the case at bar the court acts under the general provisions of the statutes.

The general liability under the statute in Washington is like that under the national banking act of the United States, and the court has construed the statute in such a way as to make the practical application of it substantially the same. Under that act assessments made by the comptroller are binding upon stockholders, although made without notice to them. U. S. Rev. Sts. § 5234.   *Casey* v. *Galli*, 94 U. S. 673.   *United States* v. *Knox*, 102 U. S. 422.   *Richmond* v. *Irons*, 121 U. S. 27, 55.   *Bailey* v. *Sawyer*, 4 Dillon, 463.   *Brown* v. *Smith*, 88 Fed. Rep. 565.   The reason for holding them binding is that the obligation is contractual, and that it contemplates the possibility of such an assessment.

Of course the defendant may show if he can that he is not a stockholder of this bank, or not a stockholder for so large an amount as alleged, or may make any other defence that is personal to himself. But we are of opinion that, as a member of the corporation, he is bound by the decision of the court of the State where the corporation was organized, made in administering its affairs in insolvency and determining the amount of its assets and liabilities and the amount of the assessment which should be made upon the stockholders.

The remaining question is whether an action upon the liability so determined can be maintained by the receiver in his own name. It has been held that an ordinary appointment as receiver, made in another State, will not enable the appointee to sue in this Commonwealth in his own name. *Wilson* v. *Welch*, 157 Mass. 77. If he has a right of property as assignee, he may maintain an action. *Fort Payne Coal & Iron Co.* v. *Webster*, 163 Mass. 134. *Ewing* v. *King*, 169 Mass. 97. Under a recent statute an assignee of an ordinary chose in action may sue in his own name. St. 1897, c. 402. The tendency is toward greater liberality in this respect. *Buswell* v. *Order of Iron Hall*, 161 Mass. 224, 229. In the present case the receiver is called by the court in Washington a quasi assignee for creditors. He is charged with the administration of a trust fund which does not take form or come into actual existence until after his appointment, and he is the only person who can collect it. By virtue of his official relation to the corporation and its creditors he is the owner of the legal title to this fund as a trustee for the creditors. A suit could not have been brought in the name of the corporation, and he is the only person who can now, or who ever could, legally demand and collect the money. We are of opinion that the action is rightly brought in his name.

In a case brought by this plaintiff to collect a part of this same assessment, the Court of Appeals in the State of New York, affirming a decision of the appellate division of the Supreme Court of that State, (*Howarth* v. *Angle*, 39 App. Div. N. Y. 151,) has recently held that the plaintiff may recover in an action at law against a stockholder in that State. *Howarth* v. *Angle*, 162 N. Y. 179. A similar decision has also been made in favor of this plaintiff against another stockholder by the United States Cir-

cuit Court for the Northern District of New York. *Howarth* v. *Ellwanger*, 86 Fed. Rep. 54. On this last question the judge in the opinion says : " The defendant Woodworth was not a party. But whether parties or not, the law seems clear that the stock-holders are bound by the order making the assessment." See also to the same effect *Sheafe* v. *Larimer*, 79 Fed. Rep. 921. On the general question many similar decisions under various statutes have been made elsewhere. *Whitman* v. *Oxford National Bank*, 176 U. S. 559. *Hancock National Bank* v. *Farnum*, 176 U. S. 640. *Hale* v. *Hardon*, 95 Fed. Rep. 747. *Bell* v. *Farwell*, 176 Ill. 489. *Western National Bank* v. *Lawrence*, 117 Mich. 669. *Whitman* v. *National Bank of Oxford*, 83 Fed. Rep. 288. *Guerney* v. *Moore*, 131 Mo. 650. *Rhodes* v. *United States National Bank*, 66 Fed. Rep. 512. *Bagley* v. *Tyler*, 43 Mo. App. 195. *McVickar* v. *Jones*, 70 Fed. Rep. 754. *National Bank of Oxford* v. *Whitman*, 76 Fed. Rep. 697. *American Freehold Land Mortgage Co.* v. *Woodworth*, 79 Fed. Rep. 951. *Schiffer* v. *Columbia College*, 87 Fed. Rep. 166. *Mechanics' Savings Bank* v. *Fidelity Ins. Co.* 87 Fed. Rep. 113 ; *S. C.* 91 Fed. Rep. 456. *Brown* v. *Trail*, 89 Fed. Rep. 641. *Platt* v. *Larter*, 94 Fed. Rep. 610. *Western National Bank* v. *Reckless*, 96 Fed. Rep. 70, and cases above cited. Other some-what similar cases which have been decided in favor of the defendant either differ materially from the present case in their facts, or rest upon reasoning which does not seem to us convinc-ing. See *Marshall* v. *Sherman*, 148 N. Y. 9 ; *Hancock National Bank* v. *Farnum*, 20 R. I. 466 ; *Crippen* v. *Laighton*, 69 N. H. 540.* *Demurrer overruled.*

---

* A similar decision was made on the same day in Suffolk, in the case of GEORGE H. KING, receiver, *vs.* JAMES W. VINAL & others.

BILL IN EQUITY, in the Superior Court, by the receiver of the Washington Savings Bank of Seattle, in the State of Washington, against James W. Vinal and six others, all citizens of this Commonwealth, to enforce a decree of the Superior Court of King County, in that State, authorizing and direct-ing the plaintiff to collect from the stockholders of the bank the amounts for which they were found to be liable under the statutes of that State.

Hearing before *Hopkins*, J., who found that the liability of stockholders to creditors under the statutes of Washington and the decisions of the Su-preme Court of that State is a contractual liability ; that the plaintiff, by reason of his appointment as receiver, became entitled to all the assets of the Washington Savings Bank, and became trustee of said assets for all the

creditors; that under certain decisions of the Supreme Court of the State of Washington it has been held that said statutory liability is to be enforced by the receiver for the benefit of all the creditors of said bank, and when realized is to be applied to the payment of claims of all creditors *pro rata* and irrespective of residence; and also by certain decisions of said court that individual creditors cannot enforce it, and that no person other than the plaintiff has the right to enforce the same.

The judge entered a decree in favor of the plaintiff, and, at the request of the defendants and with the consent of the plaintiff, reported the case for the consideration of this court.   If the above findings were correct, the decree was to stand ; otherwise the case was to be remanded for a further hearing.

*G. E. Smith & W. F. Garcelon,* for the defendants.

*G. L. Wilson,* for the plaintiff.

KNOWLTON, J.   This is a suit to recover certain assessments made by the Superior Court of the State of Washington upon the defendants as stockholders in a banking corporation.   All of the questions argued before us are covered by the decision in *Howarth* v. *Lombard, ante,* 570, and we need not consider them further.   No question was raised as to the number of shares held by different stockholders.   No objection was made to the joinder of the defendants in a suit in equity, nor to anything else in the form of the proceedings.   We have not found it necessary to determine whether, if objection were made, a formal amendment would be necessary.

*Decree affirmed.*